# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BARUCH ABRAMOV,**

    **Plaintiff,**

    **v.**      **Case No. 16-CV-1238**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Baruch Abramov seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On October 29, 2010, Abramov filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on January 1, 2006 due to spinal stenosis. (Tr. 66, 187.) Abramov's applications were denied initially and upon reconsideration. (Tr. 66.) Abramov appeared and testified at a hearing before an Administrative Law Judge, who issued a decision denying Abramov's claims on July 19, 2013. (Tr. 66-76.) The Appeals Council denied review of Abramov's appeal (Tr. 4) and Abramov filed a civil action in the United States District Court for the Eastern District of Wisconsin, *Abramov*

*v. Colvin*, 14-CV-1344 (E.D. Wis.). The case was remanded to the Commissioner upon the joint motion of the parties and the ALJ was directed to further evaluate Abramov's impairments under Listing 1.04 in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"), further evaluate the weight of the opinion evidence of record, and further assess Abramov's residual functional capacity ("RFC") and subjective complaints. (Docket # 18 in Case No. 14-CV-1344.)

Upon remand, the ALJ held a new hearing, at which time Abramov, represented by counsel, again testified. (Tr. 873.) At the hearing, Abramov amended his alleged onset date to November 1, 2010. (Tr. 961.) Abramov filed a new application, around the time of his federal court appeal, and this application was consolidated with his prior one. (Pl.'s Br. at 1, Docket # 13.) In a written decision issued March 2, 2016, the ALJ found Abramov had the severe impairments of degenerative disc and joint disease in the spine, status post cervical fusion at the C6-7 level, clinical obesity, fibromyalgia, bilateral carpal tunnel syndrome, and depression. (Tr. 964.)

The ALJ further found that Abramov did not have an impairment or combination of impairments that met or medically equaled one of the Listings, including Listing 1.04. (Tr. 964.) The ALJ found Abramov had the RFC to perform light work, with the following limitations: no more than frequent handling and fingering bilaterally; occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, or crawling; no work on ladders, ropes, scaffolding, at unprotected heights or around dangerous moving machinery; and mentally limited to simple, routine, repetitive tasks which require only simple work related decisions and few changes in the work setting. (Tr. 966.)

Although the ALJ found Abramov could not perform his past relevant work, the ALJ found that based on Abramov's age, education, work experience, and RFC, there were jobs that existed

in significant numbers in the national economy that he could perform. (Tr. 974-75.) Thus, the ALJ found Abramov was not disabled from November 1, 2010 through March 2, 2016 (the date of the decision). (Tr. 976.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 866.)

## DISCUSSION

### *1. Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675

F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### *2. Application to this Case*

Abramov argues the ALJ erred in his analysis of whether Abramov meets or medically equals Listing 1.04(A), in the weight he assigned the opinions of eight of Abramov's treating medical providers, and in his assessment of Abramov's credibility. (Pl.'s Br. at 10.) As an initial matter, the Commissioner agrees the ALJ erred, and remand is necessary, for the ALJ to: (1) reevaluate whether Abramov's impairments meet or medically equal Listing 1.04 and (2) reevaluate Abramov's mental RFC, with citation to the evidence of record to support any assessed mental limitations. (Commissioner's Br. at 1-2, Docket # 18.)

Because the parties agree the case should be remanded on at least two grounds, I will not address in detail whether the ALJ erred in the additional ways Abramov alleges. However, I will make several points to guide the ALJ on remand. Regarding the ALJ's assessment of Listing 1.04, this is the rare case where the Commissioner has agreed not once, but twice, that the ALJ erred in his analysis of Listing 1.04. The ALJ should take great care in considering the evidence the plaintiff presents in arguing Abramov meets Listing 1.04. For example, the ALJ stated that there is no evidence of nerve root compression characterized by limitation of motion of the spine, when the record seems to indicate otherwise. (Tr. 487, 864.)

Regarding the ALJ's assessment of Abramov's "credibility," on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective and issued new guidance for the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a

claimant's subjective symptoms rather than assessing his "credibility." "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Because SSR 16-3p requires the use of the same two-step test and consideration of the same factors as SSR 96-7p, in many cases the change is merely semantic. I do not see the ALJs generally using the record evidence to comment on a claimant's character. This case, however, is different. The ALJ makes several troubling character-based assumptions while assessing Abramov's subjective complaints. For example, the ALJ found that Abramov provided poor effort during examination, which could account for his reduced objective findings. (Tr. 969.) The ALJ cites to a single treatment record, in which it was reported that Abramov's "strength is limited by diminished effort." (Tr. 1781.) I do not read this record as stating that Abramov was simply not trying. During this same visit, the physician's assistant believed Abramov's reports of significant back pain warranted further investigation and ordered an MRI of the cervical and thoracic spines and referred him to a pain management clinic. (*Id.*) Perhaps his effort was diminished due to pain.

The ALJ notes that Abramov has a generally poor work record, (Tr. 970), but does not explore the reasons why. In 2016, Abramov reported to his pain management doctor that his pain began more than ten years prior. (Tr. 1414.) Perhaps his pain limited his past ability to work. The ALJ also notes that in May 2011, Abramov was able to care for all five of his children. (Tr. 969.) While this may have been true for one month in 2011, Abramov testified at his 2013 hearing that he cared for only his fourteen year old child full-time. (Tr. 992.) In 2016, Abramov testified that he

cared for two of his children full-time and his children assisted in many of the household tasks. (Tr. 880, 909.) In fact, Abramov testified that he had to teach his children to "fend for themselves" because of his limitations. (Tr. 909.)

Although these errors are concerning, even more concerning is the ALJ's finding that because Abramov received food stamps, W2, and child support, that he "may not have much incentive to return to unskilled work." (Tr. 970.) The records indicate in October 2010, Abramov was attempting to work full time and go to nursing school. (Tr. 270.) The insinuation that Abramov does not want to work simply because he receives public assistance is troubling. Without more detailed evidence and explanation to support his finding, it appears the ALJ is negatively assessing Abramov's character because he receives public assistance.

Most concerning of all, however, is the unsubstantiated allegation that Abramov was drug seeking because he was discharged from the care of his pain management doctor, Dr. Hasan, for failure to take a blood test. (Tr. 847, 969-70.) The ALJ specifically twice stated that Abramov "refused" to give a blood test and noted that it suggests "some improper use of prescribed medication." (Tr. 970, 973.) First of all, the record cited by the ALJ does not state that Abramov "refused" to provide a blood test to track his prescription medication use. The record states that he was discharged for "failure to provide blood sample." (Tr. 847.) That record, dated February 14, 2013, from Abramov's subsequent pain management doctor, Dr. King, does not provide a reason for why Abramov failed to provide the blood sample. However, a record from Dr. Hasan dated January 21, 2013 notes that Abramov "never did blood - late appt - closed pharmacy and so forgot to do lab." (Tr. 677.) While in Dr. Hasan's care, Abramov submitted to both urine and blood serum

drug abuse screens on multiple occasions. (Tr. 737-812.) Thus, if Abramov had something to hide, it is unclear why he would not have failed to take multiple drug screen tests.

Further, in the February 14, 2013 record where Dr. King notes Abramov's discharge from Dr. Hasan's care, she stated that there would be "[n]o recommendations for opioid medications until the reason for discharge from Dr. Hasan's office has been determined." (Tr. 851.) Dr. King subsequently prescribed oxycodone and morphine to Abramov (Tr. 1418); thus, she must not have been too concerned about the reasons for Abramov's discharge from Dr. Hasan's care. Also, while in Dr. King's care, Abramov submitted to multiple urine drug screens that showed his urine toxicity was within normal limits. (Tr. 1417, 1439, 1444, 1450, 1462, 1467, 1478, 1489, 1504, 1509, 1527, 1534, 1565, 1601, 1609, 1616, 1622-23, 1629-30, 1635, 1661, 1668, 1737, 1748, 1754.) Abramov testified at the time of his January 22, 2016 hearing that he was taking prescription oxycodone and morphine for pain. (Tr. 895.) Thus, if there were concerns about drug seeking behavior, it is unclear why he was continuing to be prescribed opiates.

As to the weight given Abramov's treating medical providers, the ALJ relies on the fact that many of the providers used "check the block forms with no attached objective findings to provide a logical bridge between their treatment notes and their assessed limitations" as a basis for rejecting the opinions. (Tr. 972.) In assessing the medical provider opinions on remand, the ALJ should keep in mind that the issue is not the form the provider used, but whether the opinion is supported and consistent with the objective medical evidence, the provider's relationship to the claimant, the provider's specialization, and other relevant factors. 20 C.F.R. § 404.1527.

Finally, although Abramov does not ask for his case to be remanded to a different ALJ for rehearing, I find that this is the rare case where such a recommendation is appropriate. In *Sarchet v.*

*Chater*, 78 F.3d 305, 309 (7th Cir. 1996), the court of appeals found that absent sufficient evidence of bias, it had "no general power . . . to order that a case decided by an administrative agency be sent back . . . to a different administrative law judge." However, if the "tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of [the] applicant's claim," then the court can "recommend" that the case be transferred to a different ALJ. *Id.* The ALJ in this case seems convinced Abramov is drug seeking, despite citing no record evidence in support of such a serious accusation. The ALJ further seems to believe Abramov lacks credibility because he receives public assistance. The number of egregious errors in the ALJ's credibility assessment compel me to recommend that this case be transferred to a different ALJ on remand.

## CONCLUSION

The parties agree remand is necessary for the ALJ to (1) reevaluate whether Abramov's impairments meet or medically equal Listing 1.04 and (2) reevaluate Abramov's mental RFC, with citation to the evidence of record to support any assessed mental limitations. However, on remand, the ALJ must also reevaluate Abramov's subjective complaints utilizing SSR 16-3p and reevaluate the weight assigned to Abramov's treating providers.

Although Abramov requests that this Court award him benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of October, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge